May it please the Court, Your Honor, Justices, good morning. My name is Norm Blumenthal, and with me today is Scott McRae, who worked with us together on this brief. I'd like to start out just explaining to the Court that you'll find that nothing in real parties' interests can say or do, or anything in their papers, can change the fact that the District Court's disqualification order satisfies all five bound factors for granting written relief. Real parties concede the first factor is satisfied, as petitioners have no other means to obtain review for a disqualification order. The second factor is also satisfied, as petitioners will suffer irreparable harm by losing three years of litigation, and 14 orders in arbitration if written relief is not granted. So normally we say that additional cost and delay for having to redo litigation isn't an irreparable harm or damage, and we say that's just part of the cost of litigation. I understood, Your Honor, but here we're losing the orders themselves. So I understand with time and cost may be one thing, but right now we have these 14 orders that have been issued by the arbitrator here are gone. He granted a motion to dismiss, he granted a motion to consolidate. Those are given now no weight because he's been deemed evidently partial. And so we have to start all over again and redo everything. It's not just cost and time, it's the orders themselves. That's what we submit that's different in this case than it would be in a normal case. As to the fourth factor, if this court leaves the disqualification order standing, other courts will likely repeat the same error. As the fifth factor, the district court acknowledges that this disqualification motion presents an unprecedented question to the court. The third factor, which is the most important factor, clear error. Here we have three points of clear error. All satisfy the clearly erroneous prong of the Bauman test. First, the district court clearly erred by disqualifying arbitrator error before an award was issued, contrary to 9 U.S.C. Section 1082. Let's talk about the district court's intervening mid-arbitration. I mean, we said in Aerojet General that in an extraordinary circumstance that was allowed. So unlike other circuits, we don't have any flat bar on a midstream order of that sort. So how can we say that's a clear error? Well, I think even Aerojet General Court noted that it was improvidently granted. That was a venue case. And under Section 10A, all four sections, none of them expressly have a venue situation. And so there's no ability to challenge venue at a later date. And so it would be deemed moot. So that was something that was extraordinary out of the Section 10A realm. And if you then open up, because of Aerojet General, everything, then you're going to open the courthouse doors to disqualification rather than impartiality. The losing side in every case will come up with something that wasn't disclosed. But Aerojet General said that it wasn't extreme. It didn't comply, right? No. I'm sorry, Your Honor. I'm sorry. Aerojet General said that an extreme case, whatever an extreme case is, I don't think anybody's ever found one, but an extreme case, at least an extreme case would happen. And we can't imagine there could never be an extreme case. And then went on to say, but this ain't it. Isn't that right? This certainly is not it. No, Aerojet General's case was not it. Aerojet General was not it. And that was a venue case. But the district court didn't have anything before it. There was no precedent from our circuit telling it that its case wasn't it either. I mean, it gave its reasons. It had a number of reasons why it thought this was an extraordinary case. And it's not contrary to any Ninth Circuit precedent. Isn't that correct? This case? I think it's contrary to all precedent because we have congressional will here. Section 10 is the will of Congress. And what it says, what Congress is telling the courts, so irrespective of Aerojet General, what it may or may not mean, Congress is telling you don't interfere with arbitrations until there's a final award. So is your suggestion that the language in Aerojet General holding the door open for extraordinary circumstances is contrary to the statute? I wouldn't be – I wouldn't talk with that broad a brush. But what I would say is as to the four enumerated grounds in Section 10, A, as to those four enumerated grounds, that you'd have to have something beyond what would be Aerojet General extraordinary. This is not it. Section 10 talks to how you can vacate the award, the limited circumstances post-arbitration. That's not really what we're talking about here. I mean, the district court was anticipating that at the end of the arbitration a court would overturn the award because the arbitrator was evidently partial, Mr. Herr. And so because of that, it would be a waste to allow it to go forward given the number of parties and the money involved and all that. So the district court was looking at Section 10 but anticipating a future ruling. So what prevents the district court from doing that? Well, what prevents it is the will of Congress, is the fact that they want the arbitrations to be a just, speedy, and cost-efficient process. And what statute says the district court can't make this determination in the middle of arbitration before the arbitration has concluded? Section 10. It's what Section 10 says. It has to be a final award. And what language in Section 10 says you can't in the middle of arbitration do anything? I think the language in Section 10, right at the beginning of it, says that in A, in any of the following cases, the United States court, in and for the district wherein the award was made, may make where an award was made. And so that's where it is. It's A, right, wherein an award was made. So you have to have an award. But what if it's A and the district court can take no action before this has occurred? It says you have to have an award. And so you can't take an action under Section 10, the prerequisite of it, and all the courts have held the same. Every court has ever decided this. But the district court did not vacate the award. So this in A says district court can vacate an award under these limited circumstances, but that's not what the district court did here, right? No, because there was no award made. So it's not applicable then because Section 10 is only about when you can vacate an award. So Section 10 is applicable where the district court reviews it, and Part 2 is for evident partiality or corruption of the arbitrator. That's where it reviews it. If you open it up now, if you're going to open this up to a complete can of worms, every losing party on every motion will find something that wasn't disclosed, and they're going to bring it to district court in the interim. And then, of course, maybe one of them will comply with Aerojet General's exception to an exception to a hypothetical exception. But it doesn't matter because I've now lost, like everybody else will, two years. So these are sort of policy concerns, right? These are clearly policy concerns. So we're looking at Bauman factors, which are pretty strict about the circumstances under which we would grant the writ. Well, and the Bauman factors is a fourth factor. Other courts will repeat the same error. So that's exactly what we're talking about here. And what I'm saying is that if we say it's okay, it's not an error anymore. I would guess so if you did, but then you'd have a lot more cases to work on because every losing party on every motion to dismiss in arbitration, you're going to open it up. The whole concept of arbitration was not. Well, all we're saying is that the district court didn't clearly err. Why don't you turn to the question whether the district court anticipation that Herr would be found, Mr. Herr would be found evidently partial was a clear error. That was another issue in your briefs. Okay. The clear error section. Okay. I can do that. That's fine, Your Honor. While you're looking for that, let me ask you this. In view of Aerojet General, which is on the books and opens the door to some extent, doesn't this case boil down to whether this is a most extreme case and what is a most extreme case? It does. I can't deny that if you leave the door open with Aerojet General, but my position is that Aerojet General, because it's a venue case, is a different animal than evident partiality, which is a Section 10 case. So I'd be very circumspect in your ruling to keep that door closed as much as possible, because otherwise, parties in arbitration, the losing party on any motion, is going to go through this process. And remember, here we have contractually agreed that the AAA Review Council, the independent AAA Review Council, is going to make this decision, and that decision would be deemed conclusive. So we've already contractually agreed that we wouldn't be going to court on any issue of evident partiality. And so that's another reason here that this doesn't come within Aerojet General. And so that's really important. It's not just Section 10. We have this contractual agreement. We agreed to abide by the AAA rules. The AAA rules, they apply three times, the real parties. They apply three times to the AAA independent council to say that, okay, he's evidently partial, and it didn't come to pass. But to answer Your Honor's question, going to the most important point is the point of whether or not arbitrator hair, there's any evidence of evident partiality. That's clear. And the point is, is there's no relationship or connection, direct or indirect, between arbitrator hair and the parties or their counsel, and no evidence that arbitrator hair had any financial interest in the outcome of the arbitration, the alleged allegations of evidence of partiality here, as in Langstein, Orders on the Frivolous. So when we get to the issue of evident partiality, Langstein's our case. The district court failed to cite any evidence of any direct or indirect financial personal benefit that arbitrator hair would enjoy as a result of an award in favor of Petitioners. And also failed to cite any evidence of any direct or indirect financial personal benefit that arbitrator hair would enjoy as a result of an award in favor of Petitioners. So the point here is, is that if there's a particular case, and it's not a case where the plaintiff has the expertise for financing, it looked like plaintiff's side litigation. And so that a large award to the plaintiffs in this case would bolster his business model. And that's all based on speculation and conjecture. Well, he had participated in a — he had a business, and he participated in a panel discussion. Those were the factors the district court pointed to. Yeah, and they have to relate to a party. In Langstein, in Langstein, there, the arbitrator's involvement in an ethics controversy while serving as a Nevada state judge in an FBI investigation, which resulted in his agreement not to seek reelection or serve in any judicial capacity, was held not to create evident partiality and to be borderline frivolous. Here, because of the fact that it didn't directly or indirectly relate to any relationship with a party or their counsel, and there's no evidence here that any of the parties or their counsel ever took any investment or made any investments in the litigation. So all this is, is rank speculation that the court is coming up with in deciding, well, this could happen. This might happen. But what we have here is the court concluded in Langstein, and I quote, all three arbitrators in this case discharged their disclosure obligation by providing information concerning their relationship with the parties, their attorneys, and those attorneys' law firms. And that's what you're dealing with here. Is there any relationship with a party, because you're always going to find something that may be, create a conflict in someone's mind, but that's speculation. In Langstein, if there ever was a case where you'd want to say, well, I really would want to know that because there's a potential in Langstein, if you want to speculate, that the judge could have been corrupt. It's reasonable speculation considering the FBI investigation. Do you want to save any time for rebuttal? Oh, yes. You have about 49 seconds. I'll save that time. All right. Thank you. I appreciate it. Your Honors, may I please report? I'm Steve Morris here on behalf of the Respondents. I'd like to outline for you something that you have in the brief, but I'd like to summarize  And that is, this proceeding is one in mandamus, as you, Judge Aikuda, correctly pointed out to Mr. Blumenthal. And we are here under, I believe, the Bauman factors, and those are discrete. There are five of them. The essential one is one that you mentioned and questioned Mr. Blumenthal on, and that is, is the district judge's decision, in this case, to disqualify the arbitrator pre-award clearly erroneous? We know from the case authorities that we have discussed in our briefs, and a moment ago Mr. Blumenthal discussed with you, that one of the factors that governs whether the judge made a clearly erroneous decision is whether her decision is contrary to controlling precedent. I suggest to you that it is not, and I suggest to you that it is clearly not, particularly in light of Aerojet General. Let me ask you this. I mean, the district court based its decision primarily on the district court's conclusion that Mr. Hare would be likely to be found evidently partial, and that would result in vacating the award, which would be a huge waste of judicial resources, time, and money. If the district court was wrong on that, and clearly wrong on the evident partiality point, does that make the district court's midstream intervention clearly erroneous? I don't believe so, because I don't believe that we can say that her decision was, and I don't mean to evade an answer to your question, clearly erroneous, because we have underlying her decision, which she discussed in her order. And by the way, that is a carefully crafted and detailed order. This is not just it is so ordered that we're reviewing it. Let's assume for the moment that we concluded that her decision on evident partiality was wrong, clearly wrong. How does that affect our analysis? Well, if she was clearly wrong, and you believe that the decision can't stand, that, of course, would satisfy the third factor of Bauman, clearly erroneous. It would not affect our contention that she should intervene, that she or any other district judge presented with this sort of situation, this extreme case, should have intervened prior to award. Now, she discussed this in her order, and she said, among other things, I'm cognizant Section 10A2 of the Federal Arbitration Act, which speaks to vacating an award for evident partiality. The question that she addressed was whether she could disqualify this arbitrator. In other words, could she intervene in these proceedings prior to a final award if she found equitable reasons to do so? And she concluded that she could, and she cited in support of that your decision in the order in general. And I kind of ---- Roberts, I'm sorry. Your sentence is lasting so long. It sounds like what you're saying, that whenever somebody says, well, there's evident partiality, that is, per se, an extreme case in which at which point district courts can intervene, intervene in the sense of hearing a year's worth of evidence or whatever it takes them to decide whether there was really evident partiality. The question is the first step. And it sounds like you're saying that whenever a claim is made by a party that this case has been partiality, evident partiality, that's an extreme case, and therefore the district court should intervene. No, that is not what I am saying. And if I caused you to conclude that, I apologize for it. I am saying that evident partiality or a claim of evident partiality must be evaluated in light of Aerojet General. No, that's a little ---- I don't understand. But the point is, assuming for the moment that Aerojet General isn't just way off the boards, but never left the plane, the question I'm saying, every time somebody says, oh, I think the arbitrator is not impartial, that becomes an extreme case in the sense that they can start listening to it. Or the court can say, well, maybe this will turn out to be an extreme case, and therefore we'll have interlocutory proceedings about the partiality question. Correct? They'll have to have the ---- I take it they'll have to always have proceedings any time this is brought. I don't think that we're here addressing what it is you can decide or what I'm contending that would prevent the filing of a motion on a claim of evident partiality preaward. I think what we're addressing here is whether, if someone asserts such a claim, is it which calls for the district judge to intervene. And that isn't what we are contending. I understand. But the point is, whenever it's raised, it's going to be an instance where district judges will be asked to and will be intervening in arbitrations. Will it not? I mean, they'll have to. They will take ---- how long is this case? I mean, from the district court file, about a year now or so. So one will have to be in court proceedings simply because the party says, oh, there's evident impartiality, and therefore you start having court proceedings so the courts can figure out, is this an extreme case? Correct? Well, certainly that would be the case if a motion is filed, and that would be the case. I assume that if no motion is filed, nobody would be there. Well, of course. And if the motion is filed, that doesn't mean the judge has to go through the analysis that she did here, because the facts, the facts of this govern whether it is an extreme case or not. If she had concluded that the facts that were presented did not arise to the level of an extreme case, as referred to in Ehrlich, or to use another term, extraordinary, is this your term, Judge? We wouldn't be here today. We are here because of, I believe, the extraordinary circumstances that gave rise to this challenge. Well, I'm curious. On equitable grounds. I'm curious about Judge Fernandez's scenarios of if there's a motion that the arbitration is ongoing, there's a motion to the district court, and so the district court, like this one, then, would say, well, I will review the papers, and if there is some colorable argument, then we put the arbitration on pause while we hear the case about whether the arbitrator is partial or not. So that would be an interruption, even if at the end of that hearing the district court says, well, I don't think there's enough to yank the arbitrator. You're still interrupting the course of the arbitration by that sort of inquiry, much like what the district court did here. Yes, that's true. There was an interruption here, and I suggest to you that it was an interruption for good cause. So you think that would be a permissible proceeding, so that whenever there was a motion about any of the factors, I guess, in Section 10, that the district court should stay the arbitration while reviewing or having an evidentiary hearing on that issue? No. But if the facts are as they were presented to this judge when she was considering whether to stay this case or not, and to entertain further hearings or arguments on the contention that the judge was evidently partial, she looked at the facts. Well, the facts here didn't seem very extreme. So as the opposing counsel points out, most of the cases where there's been a finding at the end of the arbitration of evident partiality, there involves some direct current or likely future financial involvement between the arbitrator and one of the parties. And here is very attenuated whatever the relationship, if any, is between the arbitrator and the plaintiffs or whoever. What's the best case for suggesting this raises a specter of tremendous partiality? Let's look at this particular situation. We're not now discussing, I don't believe, whether there's an actual conflict or not relationship between, which is most of the cases that the Petitioners have attended to, whether there's an actual relationship with the arbitrator and one of the parties. That isn't the case here. Evident partiality is a question of appearances and of appearances under belying an attitude. So your best case, because this seemed very attenuated to me. Pardon me? Our best case is this. We have an arbitrator who was obligated to disclose his business and financial matters that could be considered by a reasonable person as reasons to question his ability or qualifications to sit as an arbitrator. He was appointed twice in this case. In 2010, when he was first appointed, he made disclosures and he said in substance, I have nothing to disclose. A month later, he founded Bowdoin Capital Corporation and began his activities to raise money from and to solicit. So by best case, what I actually meant was what is the precedent that would best support the In this circuit? Everget General. Because that wasn't looking at evident partiality. No, it wasn't. But it certainly sketched in its opening. The judge sketched in his opening, the deciding judge, in his opening remarks, he said this, or the Court said this. Our first question is whether judicial scrutiny of arbitration proceedings is ever appropriate prior to the rendition of a final award. And the Court concluded that it was. But, the Court said, that's only in extreme cases. And this isn't an extreme case, this issue with respect to choice of venue or designation of venue. So I think what we have here is an arbitrator who has said to parties, I am declaring myself a neutral. I'm not going to disclose to you that my real interest, my motivation for acting as a neutral arbitrator, as we point out and gave to you as evidence in supplemental excerpts of record number 66, I am interested in soliciting, supporting, and profiting from large plaintiffs' cases that have high value. That's this case, 385 individual claimants making thousands of claims, claiming tens of millions of dollars. And the arbitrator said, this is what I am interested in taking sides with. I want to participate in and profit from this kind of litigation. We're only saying that he should have disclosed that. When he was appointed a second time, his activities as an arbitrator interested in siding with plaintiffs, as Judge Dew pointed out in her order, had matured. And he filed another set of disclosures.  That I did not disclose when I was appointed before I began this activity. I suggest to you, Your Honor, if you were in the position of my client, if any one of the three or all of you were, that that sort of information you would like to know at the outset in evaluating whether the arbitrator is qualified to serve as a neutral. And in that excerpt of record that I pointed out to you, it's worthwhile to look at how the arbitrator manipulated that title and presented it to investors and plaintiffs' law firms who were in the audience that he was addressing with his PowerPoint slides. What he said is, my status as a neutral arbitrator creates for me, which would benefit you, a network of nationwide contacts with litigation firms to access cases. Well, the cases he's talking about accessing and brought by litigants nationwide are cases like this in which plaintiffs' lawyers, such as the people at the council table here, are participants and interested in. I know there's not an actual relationship here, but as Judge Mark Denton said in the State court when he was presented with these same facts, he said, this conduct and the failure to disclose it indicates an attitudinal predisposition that is not consistent with neutrality. We didn't have that. Thank you. Thank you, Your Honor. My 46 seconds left. I'd take a look again at Arrow Jet General because the part we haven't talked about is substantial deference to the AAA's ruling. And there, there was a AAA ruling in that case, and it says where the parties to a contract agree the factual determination is to be made by a neutral third party, that determination is upheld in the absence of fraud or gross mistake as would necessarily imply bad faith. As a result of that, you also need to look at Arrow Jet General and give deference to the AAA ruling. That's what we contractually agree to in accepting the AAA rules. So this is not a case, as in Langstein, where it was a case where the AAA or the arbitrator neither had ruled on evident partiality. Here, there is deference here. So that adds to our Langstein point that this case is clearly borderline frivolous in terms of evident partiality in that there's no evidence of any relationship, and the New Century case, New Regency production case, is directly on point. Thank you, Your Honor. Thank you. The case of Sussex v. District Court is submitted.
judges: Albritton, Fernandez, Ikuta